AUSA: Jonathan Tukel Telephone: (313) 226-9749

AO 91 (Rev. 08/09) Criminal Complaint Special Agent: Adam Christensen - FBI Telephone: (313) 965-5811

ORIGINAL

9

# UNITED STATES DISTRICT COURT

for the

Eastern District of Michigan

United States of America,

Plaintiff,

v.

Al-Hamzah Mohammad Jawad

Defendant(s).

Case:2:15-mj-30085
Judge: Unassigned,
Filed: 02-18-2015 At 03:41 PM
USA v AL-HAMZAH MOHAMMAD JAWAD (MAW
)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief:

On or about the date(s) of February 17-18, 2015, in the county of Wayne in the Eastern District of Michigan, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1001 | False Statements |

This criminal complaint is based on these facts:
See attached AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

Adam Christensen, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: FEB 18 2015

*Judge's signature*

City and state: Detroit, Michigan

Elizabeth A. Stafford, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT
IN SUPPORT OF CRIMINAL COMPLAINT

I, Adam Christensen, a Special Agent for the Federal Bureau of Investigation (FBI), Detroit, Michigan, United States Department of Justice, being duly sworn, depose and state the following:

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 3052, and I am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 1001.

2. I have been a Special Agent of the FBI for over four years. I am presently assigned to the Detroit Division of the FBI. My duties include the investigation of various violations of federal criminal law, including international terrorism.

3. The statements contained in this affidavit are based upon my own investigation, as well as upon information provided by other Special Agents of the

FBI, conversations held with officers from other law enforcement organizations, and upon my experience and background as a Special Agent of the FBI. I have not included all the facts known about the case, only those necessary to establish probable cause to believe that Al-Hamzah Mohammad Jawad has violated Title 18, U.S.C. § 1001 - False Statements

4. Al Hamzah Mohammad Jawad is a US Green Card holder, born on May 28, 1985, in Iraq. He entered the U.S. on March 18, 2013 as a refugee from Iraq. He is single and lives with a male roommate, Hothaifa-Tariq Al-Qassab. The two reside at 500 West Lake Lansing Road, Apartment C31, East Lansing, Michigan.

5. On February 17, 2015, Jawad, his brother, Hashim Jawad, and his brother's wife, Raghda Al-Barrak, drove from Lansing, Michigan to Detroit Metropolitan Airport to drop off Jawad so he could travel to Amman, Jordan.

6. While at DTW, US Customs and Border Protection (CBP) conducted an outbound inspection of Jawad on the

jetway at DTW. While conducting the interview, CBP became alarmed when Jawad could not explain his future travel or why he purchased a one-way ticket one day prior to his departure. CBP personnel then escorted Jawad to an interview room and contacted Detroit FBI Special Agent Michael Thomas. At approximately 5:00 pm on February 17, 2015, CBP personnel and Special Agent Michael Thomas interviewed Jawad at DTW. While conducting the interview, Jawad stated that he had suggested to his brother, Hashim, that he wanted to travel to Amman, Jordan to visit their mother who is a professor in Amman. After several minutes of conversation, Jawad voluntarily stated the following:

a. He was traveling to Amman and then ultimately to Iraq to conduct jihad.

b. He had been recruited by his childhood friend, Saad Alhalali, aka Saad Asham, to join, train, and fight with the Islamic State in Iraq and the Levant (ISIL) in Iraq.

c. He pledged allegiance to Sheik Al Baghdadi, the leader of ISIL.

d. He had planned on traveling to Amman and then he was going to travel by car to Fallujah, Iraq to attend 6 months of training.

7. Jawad also stated that he had been to the shooting range and had been running to get in shape and prepare for his upcoming travels. Jawad stated that his childhood friend, Saad Alhalali, had a uniform waiting for him in Iraq and that Alhalali had killed many Shia and Kurds in Iraq. Jawad stated that he had received emails from Alhalali discussing training with ISIL. Jawad also stated that he had made those email communications from his cellular telephone. Specifically, Jawad stated that he had had email communications with Alhalali two days before. Jawad also stated that he was to call Alhalali when he arrived in Iraq.

8. Later in the interview, Jawad provided verbal consent to law enforcement personnel to search his cellular telephone. A search of the telephone did not reveal any video of swearing of allegiance to ISIL of Sheik Al Baghdadi. Jawad was unable to find the email communications with Alhalali on his cellular telephone which he had previously described to agents. Jawad also could not locate Alhalali's telephone number, even though he previously told agents he was to call Alhalali when he arrived in Iraq.

9. Special Agent Michael Thomas contacted Jawad's brother on the telephone to explain that Jawad was being questioned due to his statement concerning ISIL and Jawad's desire to travel and fight with ISIL. Hashim Jawad was very surprised when he was told that Jawad wanted to travel to Iraq to train with ISIL. Hashim stated that he did not spend every day with Jawad, but did not think he was radical or a supporter of ISIL. When asked about Jawad's contact in Fallujah, Saad Alhalali, Hashim stated that he was not aware of

whom Saad was or that his brother was in contact with him. Hashim also stated that his wife, Raghda, is a Shia and the two resided in Kurdistan for several years prior to arriving in the United States.

10. Special Agent Michael Thomas spoke to Jawad's roommate, Hothaifa-Tariq Al-Qassab on the telephone. Al-Qassab stated that Jawad had been acting strangely over the past several weeks, but due to opposite work schedules, Al-Qassab never saw Jawad at the apartment.

11. Jawad was then interviewed by the affiant and FBI Special Agent Steven Shaefer. During the interview, Jawad provided consent to search a laptop computer that was located at his residence in East Lansing, Michigan.

12. During this interview when asked to provide any corroborating information regarding his contact with Saad Alhalali or his intended further travel to Iraq, Jawad was not able to provide any.

13. Jawad then stated that he had fabricated the entire story concerning his contact with Saad Alhalali

and his further travel to Iraq to join ISIL. Jawad could not provide an explanation for why he had fabricated this story, stating only that his home life was messy. Jawad would not provide any further information.

14. In addition, Jawad gave consent to search a thumb drive which was in his pants pocket. No connections to ISIL or communications to Saad Alhalali were found upon an initial search of these devices.

15. Given Jawad's original statements that he intended to travel to Iraq to train with and join ISIL is contradicted by his later statements that he fabricated the story for an unspecified reason, he made material false statements to a federal official. Specifically, Jawad falsely stated that he had email communications involving Alhawlali on his cellular telephone relating to ISIL. Thus, there is probable cause to believe that Al-Hamzah Mohammad Jawad has willfully made material false statements to federal official in a matter within the jurisdiction of the

executive branch, in violation of 18 U.S.C. § 1001(a)(2).

Adam Christensen
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me
This 18th day of February, 2015.

Honorable Elizabeth Stafford
United States Magistrate Judge